UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC KARL ANDERSON,

    Petitioner,

v.

    Civil Action 14-CV-12950
    HONORABLE GERSHWIN A. DRAIN
    UNITED STATES DISTRICT COURT

PAUL KLEE,[1]

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. INTRODUCTION**

Eric Karl Anderson, ("Petitioner"), confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through his attorney, James Sterling Lawrence, petitioner challenges his conviction out of the Wayne County Circuit Court for two counts of armed robbery, Mich. Comp. Laws § 750.529, one count of assault with intent to rob while armed, Mich. Comp. Laws § 750.89,[2] and one count of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. For the reasons stated below, the petition for a writ of

---

[1]The Caption is amended to reflect that petitioner is currently housed at the Gus Harrison Correctional Facility and the Warden is Paul Klee.

[2] The Michigan Court of Appeals vacated Petitioner's conviction for assault with intent to rob while armed on double jeopardy grounds.

1

habeas corpus is **DENIED.**

## II. BACKGROUND

On April 18, 2010, in the city of Detroit, Gregory Matthews and Stephon Tolin were robbed at gunpoint. Around 3:19 a.m. while Matthews and Tolin stood in front of Matthews's home, Matthews saw petitioner and another individual walk past them. The area was lit by a pole with a light in front of Matthews' house and by a porch light attached to the house. (Tr. 11/3/10, pp. 10, 66). Matthews recognized both petitioner and his accomplice because he had seen them five or six times in the neighborhood. (Tr. 11/3/10, pp. 10-14, 20-21,65). Matthews identified, with certainty, petitioner as one of the assailants that robbed him. (Tr. 11/3/10. pp. 14-15, 22). However, Matthews did not know petitioner's name until petitioner's ex-girlfriend told Matthews his name and suggested he view a picture of petitioner on Facebook. Once he looked on Facebook, Matthews was able to identify petitioner as the assailant and brought the picture to the police. Tolin could not identify either robber and testified that a gun was in his face the entire time. (Tr. 11/3/10 Tr. p. 77).

Matthews saw petitioner and the other individual turn around and run towards him and Tolin, this time with their faces covered and armed with handguns. (Tr. 11/3/10, pp. 6-9). The robbers pointed their handguns at Matthews and Tolin and then took Matthews' money, wallet, house keys, and car keys and Tolin's phone and fifty dollars. (Tr. 11/3/10, pp. 8-9, 25, 75, 77). The other assailant placed Matthews in a headlock, while petitioner struck Matthews with his handgun above Matthews'

right eyebrow and nose. (Tr. 11/3/10, pp. 8, 33, 68). Afterwards, Matthews and Tolin were told to leave the area. (Tr. 11/3/10, pp. 11, 33-34). Within a minute after leaving the house, Matthews heard two gunshots. (Tr. 11/3/10, p. 12).

Matthews called and woke his mother, Omeake Taylor, on his cell phone, telling her that he had been robbed and that the assailants took the keys to his car. Taylor looked out her window on the second floor and saw two individuals near her son's car, which was parked in her driveway. (Tr. 11/3/10, pp. 27, 121-122, 124). Earlier that day, Taylor had seen the individual on the passenger side of Matthews' car wearing the same beige shirt, without his face covered. Taylor identified this man as petitioner. (Tr. 11/3/10, pp. 122, 133).

Darius Nunlee testified that on the morning of April 18, he and petitioner went to a club in downtown Detroit before going to the Coney Island on Woodward and Mack. (Tr. 11/3/10, pp. 165-166). According to Nunlee, petitioner got shot at the Coney Island so he drove him to Sinai Grace Hospital. (Tr. 11/3/10, pp. 167-168). Nunlee and Petitioner have been friends since elementary school. (Tr. 11/3/10, p. 186).

Petitioner's conviction was affirmed on appeal. *People v. Anderson*, 2012 WL 3536791; *lv. den.* 829 N.W.2d 221 (2013).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied a fair trial by the missing witness and refusal to provide a missing witness jury instruction.

3

II. Petitioner was prejudiced by ineffective assistance of trial counsel.

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

4

incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## IV. ANALYSIS

**A. Claim # 1. The missing witness claim and missing witness instruction claim.**

Petitioner alleges that the prosecutor failed to exercise due diligence in locating and subpoening Arielle Johnson for trial and should not have been excused from producing her at trial. Petitioner further contends that the trial court judge erred in failing to give a requested adverse inference instruction to the jury. Petitioner requests that this Court hold an evidentiary hearing pertaining to the missing witness and the missing jury instruction.

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 F.App'x. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F.App'x. at 559.

Petitioner has offered no evidence, other than speculation, that Johnson would have provided exculpatory evidence. Although petitioner claims that Johnson might have testified that she provided petitioner's name to Matthews and Matthews looked petitioner up on Facebook, Matthews testified that he had seen petitioner numerous times in the neighborhood but did not know his name.

The Michigan Court of Appeals rejected petitioner's *res gestae* and related instructional error claim as follows:

> A res gestae witness is one who witnesses "some event in the continuum of the criminal transaction" and whose testimony would aid "in developing a full disclosure of the facts at trial." It was alleged that Johnson provided Gregory Matthews with defendant's name and informed him that he could see a picture of defendant on Facebook. It was never alleged that Johnson witnessed any event in the continuum of the criminal transaction. Matthews testified that he had seen defendant in the neighborhood but did not know his name. When he was provided with defendant's name by Johnson and looked up defendant's picture on Facebook, Matthews was able to identify defendant as the perpetrator of the armed robbery. At trial, Matthews testified to these facts and the jury chose to believe him.
>
> Although Johnson should not be considered a *res gestae* witness, she was an endorsed witness. The prosecutor was unable to show that due diligence was exercised to obtain her presence at trial. In this instance, a missing jury instruction may have been appropriate. However, even if the missing witness instruction were applicable, reversal is not warranted because defendant did not establish that the error resulted in a miscarriage of justice. At trial, defendant claimed that he did not commit the crimes and that he had been shot at a restaurant just before the time the crimes were committed. Defendant does not assert that Johnson would have provided any testimony to establish that he was innocent, only that she told the victim that she thought defendant was the individual who robbed him and that there was a picture of defendant on Facebook. After review of the nature of the error in light of the weight and strength of the evidence, it does not

7

> appear more probable than not that the failure to provide the instruction was outcome determinative. We find that the trial court did not abuse its discretion when it did not provide the jury with the missing witness jury instruction.

*People v. Anderson*, 2012 WL 3536791, at *3. (internal citations omitted).

Petitioner failed to show that Ms. Johnson would have provided exculpatory evidence, thus, the prosecutor's failure to call her to testify at petitioner's trial would not entitle him to habeas relief.

The Court rejects petitioner's related claim that the jury should have been given the missing witness instruction.

A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce witnesses. *See Stadler v. Curtin,* 682 F. Supp. 2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to habeas relief on his first

claim.

### B. Claim # 2.  The ineffective assistance of trial counsel claims.

Petitioner alleges that he was denied the effective assistance of trial counsel when counsel failed to move to suppress the in court identification testimony of Gregory Matthews, failed to compel the production of Arielle Johnson, and failed to adequately present the alibi defense.  Petitioner requests that this Court conduct an evidentiary hearing in connection with his ineffective assistance of trial counsel claims.

To the extent that petitioner contends that the state courts erred in denying him an evidentiary hearing on his ineffective assistance of counsel claims, that alone would not entitle him to habeas relief.  There is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *See Hayes v. Prelesnik*, 193 F.App'x. 577, 585 (6th Cir. Aug. 25, 2006).

Even if there is a due process component to petitioner's claims involving the denial of his motions to remand by the Michigan Court of Appeals, deprivation of this sort would not form the basis for issuing a writ of habeas corpus, but might support a request for an evidentiary hearing in this Court for the purpose of developing a record on the petitioner's ineffective assistance of counsel claims. *See May v. Renico,* 2002 WL 31748845, *5 (E.D. Mich. 2002).  This Court must determine whether petitioner is entitled to an evidentiary hearing on his claims.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.* Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). Furthermore, a habeas petitioner is not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel where the petitioner fails to allege specific facts which, if true, would entitle him to relief on his claims. *See Barber v. Birkett,* 276 F. Supp. 2d 700, 706 (E.D. Mich. 2003)(petitioner was not entitled to an evidentiary hearing on his claims that he was denied his right to counsel and that his appellate counsel rendered ineffective assistance, where he did not assert any facts which, if true, would establish a constitutional error). As will be discussed below, petitioner's ineffective assistance of counsel claims are without merit, therefore, he is not entitled to an evidentiary hearing on these claims.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

 **1. Failure to suppress identification as unreliable.**

Petitioner claims that the trial court judge erred in failing to suppress the in-court identifications of Gregory Matthews as being the product of a suggestive identification procedure.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the

procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil,* 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner claims that Matthew's in-court identification was tainted because Arielle Johnson, not subpoenaed for trial, told Matthews that he was robbed by petitioner and told him to look up her recent prom photos that she posted on Facebook. Matthews testified at trial that he had seen petitioner and his accomplice

13

numerous times prior to the robbery and viewed petitioner's face just prior to the robbery. Matthews also testified that he actually saw petitioner's face and recognized him as someone he had seen several times in the neighborhood. (Tr. 11/3/10, pp. 11, 20-21); *Ander*son, 2012 WL 3536791, at *2.

Petitioner fails to show how Matthews' in-court identification was the product of a suggestive pre-trial identification. Matthews was not shown petitioner's photograph by the police but looked at it himself on Facebook. "[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012). There is no suggestion that Matthews was subjected to a suggestive pre-trial identification; accordingly, trial counsel was not ineffective for not moving to suppress Matthew's in-court identification. *See Perkins v. McKee,* 411 F.App'x. 822, 833 (6th Cir. 2011).

**2. Failure to call endorsed witness.**

Petitioner alleges that trial counsel was ineffective for failing to prepare a subpoena to request the production of Arielle Johnson, the missing endorsed witness, for petitioner's trial or to request a due diligence hearing concerning the

prosecutor's failure to produce this witness.

The trial court found that Johnson was not an important witness to the case. (Tr. 11/3/10, p. 145.). She witnessed no "event in the continuum of the criminal transaction." *Anderson*, 2012 WL 3536791, at *3. Further, Anderson never asserted "that Johnson would have provided any testimony to establish that he was innocent . . . ." *Id.* Thus, petitioner had no entitlement to have Johnson produced as a witness. Because petitioner has failed to show that Johnson would have offered exculpatory testimony for the defense, counsel was not ineffective for failing to seek the production of Johnson or for failing to demand a due diligence hearing. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006). Petitioner is not entitled to relief on this claim.

### 3. Failure to adequately present the alibi.

Petitioner contends that trial counsel was ineffective by failing to present the video from the restaurant to the jury, showing petitioner at a restaurant at 3:00 a.m., 10 miles from the location of the robbery which occurred at 3:18 a.m., and by failure to conduct cross-examination concerning the contents of the video.

Trial counsel cross-examined Officer Todd Ebey extensively, who testified that he did not believe the video lent support to petitioner's alibi defense. (Tr. 11/3/10, pp. 96, 109.) The video displays several individuals at the restaurant wearing jeans with designs on the pockets. Officer Ebey saw no one with a red jacket matching Anderson's description. (Tr. 11/3/10, p. 98). The video shows an

African-American female and a Caucasian male with a beard who have red jackets. It also shows another individual wearing jeans with a design and footwear that could be Wheat Timberland boots, but that person has a grey jacket with a light grey hoodie underneath. That individual is only visible for approximately three seconds, from 3:00:36 until 3:00:38 and is on the other side of the restaurant from where the shots were heard.

In regards to the failure to present the video and failure to investigate and adequately present petitioner's alibi defense, the Michigan Court of Appeals found:

> Fourth, defendant's argument that his attorney failed to investigate and present evidence regarding his alibi is unfounded. Defendant does not indicate what his attorney should have investigated and what further evidence should have been presented. In fact, defendant presented an alibi defense that he could not have committed the robbery because he had been shot at a restaurant approximately 10 miles away just before the time the robbery was alleged to occur. Both defendant and his friend, Darius Nunlee, testified regarding this, and Officer Ebey testified regarding the contents of the restaurant's videotape. There was evidence that a person who could have been defendant was at the restaurant at 3:00 a .m. There was also evidence that an armed robbery occurred 10 miles away from the restaurant at approximately 3:18 a.m., shots were heard within minutes after the robbery occurred, and defendant presented at Sinai–Grace Hospital at 3:33 a.m. with a gunshot wound. The victim of the robbery identified defendant as his assailant. Even if the jury believed that defendant was at the restaurant when the shooting occurred there, defendant had time to get to the location where the robbery occurred and to the hospital approximately three miles away. Any errors in presenting defendant's alibi do not indicate performance by the defense attorney that was below an objective standard of reasonableness. Defendant was not denied the effective assistance of counsel.

*Anderson*, 2012 WL 3536791, at *5. (internal citation omitted).

Because petitioner could have left the Coney Island at 3:00 a.m. and gone to the scene of the crime to commit the robbery at 3:18 a.m. (Tr. 11/3/2010, p.106), trial counsel did not have a duty to present the video supporting an alibi defense to the jury.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004). The failure to adequately present a proposed alibi defense which would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. *Id.* Because the video could not have provided an "air-tight" alibi defense, counsel was not ineffective for failing to present the video to the jury. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his alibi claim.

## V. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's

17

constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

## VI. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

/s/Gershwin A Drain
**HON. GERSHWIN A. DRAIN**
**Dated: March 29, 2017**      UNITED STATES DISTRICT JUDGE